IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER KATHLEEN FONSECA,           No. 6:16-cv-00477-HZ

        Plaintiff,                             OPINION & ORDER

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Lisa R.J. Porter
JP Law PC
5200 SW Meadows Rd., Suite 150
Lake Oswego, OR 97035

      Attorney for Plaintiff

Billy J. Williams
United States Attorney
Janice E. Hebert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Sarah Moum
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Heather Fonseca brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Court AFFIRMS the Commissioner's decision.

## BACKGROUND

Plaintiff was born in 1971 and was forty-three years old at the time of her administrative hearing. Tr. 31, 159.[1] She has a high school education and past relevant work experience as a housekeeper and office clerk. Tr. 29–30. She applied for SSI on August 7, 2014, alleging her disability onset date as June 1, 2011. Tr. 159–64. Her application was initially denied on October 29, 2014, and again on reconsideration on January 2, 2015. Tr. 69, 85. Plaintiff requested an administrative hearing which was held on June 30, 2015, before Administrative Law Judge ("ALJ") Marilyn Mauer. Tr. 39. On October 8, 2015, ALJ Mauer issued a written opinion denying Plaintiff's application. Tr. 18–32. The Appeals Counsel denied Plaintiff's request for review, making the ALJ's opinion the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–7.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as ECF 14.

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

# THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 3, 2014. Tr. 20.

At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease, obesity, carpal tunnel syndrome, bilateral patellofemoral syndrome, anxiety, and depression." *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. *Id.*

The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work . . . . She can lift 20 pounds occasionally and 10 pounds frequently. She can sit, stand and walk each six hours in an 8-hour day for a combined total of 8 hours of activity. She can frequently handle, finger, and feel. She can never climb ladders, ropes scaffolds. She must avoid hazards such as unprotected heights and large moving equipment. She can frequently climb ramps and stairs. She can occasionally crouch, stoop, kneel and crawl. She can balance without limitation. She can understand, remember and carry out simple instructions in a setting with no public contact, no teamwork assignments, and no strict production pace (defined as no strict hourly rate so long as adequate work is complete at the end of the workday).

Tr. 26.

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a housekeeper and office clerk. Tr. 29–30. Even though the ALJ had determined that Plaintiff was not disabled at step four, she proceeded to consider whether there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 30. The VE testified that, given Plaintiff's RFC, past work experience, and education, she could perform

the jobs of polisher eyeglass frames, document preparer, and addresser. Tr. 30. The ALJ found that document preparer and addresser jobs existed in significant numbers in the national economy. *Id.*

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises three challenges to the ALJ's decision: (1) the ALJ did not provide clear and convincing reasons for finding Plaintiff less than fully credible; (2) the ALJ failed to provide legally sufficient reasons to reject or omit the medical opinion of Nicole Miller, MA; and (3) the ALJ failed to incorporate all medical findings into Plaintiff's RFC.

//

//

## I. The ALJ's Determination of Plaintiff's Credibility

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [her] alleged symptoms," however, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 23. An ALJ analyzes the credibility of a claimant's testimony regarding her subjective pain and other symptoms in two steps. *Lingenfelter*, 504 F.3d at 1035–36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (citation and internal quotation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject her testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation omitted). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. *Id.*

The ALJ found that Plaintiff's subjective symptom testimony was not credible because it was inconsistent with evidence in the medical record and inconsistent with her daily activities. Plaintiff stated that she had many physical limitations, including: inability to sit for longer than

ten to fifteen minutes; extreme sharp back and hip pain; arthritis in her hands, hips and knees; inability to lift ten pounds; ability to lift only three to five pounds comfortably; inability to manipulate small objects; inability to use her hands without immediate numbness; bowel and urinary incontinences; inability to walk ten to fifteen feet without a cane; and that she would throw her back out every one to two months causing her to lay down for one to one and a half weeks. Tr. 48–58.

The ALJ relied on several medical opinions which were inconsistent with Plaintiff's statements:

> Dr. Knowlton repeatedly found she was neurologically grossly intact with normal gait. PA Jensen found she had full motor strength throughout and normal gait. NP Young found she had grossly intact sensation. Dr. Williams found she was able to transfer from the chair to the exam table, sit comfortably and was able to take her shoes off without difficulty, and walk to the exam room without difficulty. The doctor found she had normal gait and intact hop and squat. The doctor found she did not need a cane. The doctor found she showed intact gross and fine motor skills. The doctor found she had no paravertebral muscle spasms, tenderness, crepitus, effusions, deformities or trigger points. The doctor found she had full strength in the upper and lower extremities, near full grip strength, and grossly intact sensation. Diagnostic imaging of the left knee was unremarkable. Diagnostic imaging of the lumbar spine showed minimal abnormalities.

Tr. 27 (internal citations omitted). The ALJ properly identified the testimony that was not credible and the objective medical evidence that undermined Plaintiff's complaints. *Berry*, 622 F.3d at 1234. Accordingly, the Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony incredible. Plaintiff argues, however, that the ALJ failed to point to medical evidence contradicting her claimed bowel and urinary incontinence. At the administrative hearing, the ALJ questioned Plaintiff on this topic and Plaintiff stated that she could wear adult diapers, but did not. Tr. 60–

61. Plaintiff also stated that she used hygiene products in response to her incontinence and does not otherwise indicate how it limited her. *Id.* In sum, the omission of Plaintiff's incontinence from the written opinion does not undermine the ALJ's credibility determination because the majority of Plaintiff's statements regarding her limitations were shown to be inconsistent with objective medical evidence.

Regarding Plaintiff's mental impairments, she claims that she: feels very depressed, has panic attacks, is fatigued, is very anxious, that her ability to interact with others is impaired, she has difficulty concentrating and falling asleep, diminished interest or pleasure, guilt, loss of appetite, restlessness, and suicidal thoughts. Tr. 361–87. Here too, the ALJ found that Plaintiff's testimony was inconsistent with medical evidence in the record. Tr. 27. For example, the ALJ noted that Dr. Knowlton "repeatedly found she had normal affect with good eye contact." Tr. 27, 320. The ALJ further noted that multiple providers found that she was emotionally stable, had an appropriate affect, and an unremarkable stream of mental activity. Tr. 27, 280, 301, 320, 356, 359, 404. Here, it was rational for the ALJ to interpret the medical evidence as inconsistent with the severity of Plaintiff's claimed mental impairments. The ALJ provided substantial evidence supporting her credibility determination and the Court will not substitute its own judgment on the matter.

Lastly, the ALJ found that Plaintiff's daily activities demonstrated that she was not as limited as her complaints would indicate. Tr. 27. The ALJ noted that Plaintiff reported she: showered and dressed herself; prepared meals; did dishes and laundry; traveled by walking; walked six miles a day; shopped in stores twice a month; handled her funds, and visited her parents twice a month. *Id.* The ALJ also found that Plaintiff's claim that she could not be around more than two or three people was inconsistent with the fact that she lived in a homeless camp

with a communal kitchen. *Id.* With regards to that last point, the Court agrees with Plaintiff that the ALJ should not have considered the fact that the Plaintiff lived in a homeless camp as evidence inconsistent with her claimed social anxiety. The remainder of Plaintiff's daily activities the ALJ relied on, however, were inconsistent with Plaintiff's claims regarding her physical limitations. The Court finds that these inconsistencies also supported the ALJ's credibility determination.

## II. The ALJ's Treatment of MA Miller's Medical Testimony

Next, Plaintiff argues that the ALJ did not provide sufficient reasons to reject MA Miller's opinion. In Social Security cases, there is a hierarchy for weighing medical providers' opinions. Generally, more weight is given to the opinion of a treating source than to an examining source and more weight is given to the opinion of an examining source than to a non-examining source. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996). Furthermore, there is a distinction between "acceptable medical sources" and "other sources." Mental health examiners, such as MA Miller, are considered "other sources." *See* 20 C.F.R. § 416.913(a); SSR 06-03p. The opinions of "other sources" are entitled to less weight than "acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). While the ALJ must consider "other source" opinions, the ALJ need only provide germane reasons for rejecting such opinions. *Id.* Furthermore, the ALJ may use evidence from "other sources" "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p.

The ALJ gave germane reasons for discounting MA Miller's opinion. The ALJ gave the opinion little weight because it did not specifically describe Plaintiff's functional limitations. Tr. 28, 270, 275. MA Miller's opinion discusses Plaintiff's anxiety but not how it impacts her functioning. Tr. 270. Further, she merely lists the severity of Plaintiff's "occupational problems"

and "problems related to the social environment" as "moderate" without further explanation. Tr. 275. This opinion in no way describes how Plaintiff's impairments affect her ability to function. The ALJ also noted that the opinion does not describe Plaintiff's functioning during the relevant time period. Tr. 28. Instead, the ALJ gave great weight to the opinion of consultative psychological examiner Dr. Manuel Gomez. *Id.* Dr. Gomez provided specific testimony regarding the impact Plaintiff's impairments had on her functioning, his opinion was based on an examination of Plaintiff, and his opinion was more consistent with his clinical findings. Accordingly, the Court finds that the ALJ gave reasons germane to MA Miller for according her opinion little weight. [2]

### III. The ALJ's Formulation of Plaintiff's RFC

Because the Court finds that the ALJ's determinations regarding Plaintiff's testimony and MA Miller's opinion were not in error, it concludes that Plaintiff's RFC was supported by substantial evidence and properly formulated. Therefore, the Court affirms the ALJ's ultimate disability determination.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

Dated this ____ day of __April__, 2017

MARCO A. HERNÁNDEZ
United States District Judge

---

[2] Plaintiff also argued, for the first time in her Reply, that the ALJ did not provide a germane reason to discount the opinion of lay witness Anthony Downing. The Court, in exercising its discretion, declines to entertain Plaintiff's argument raised for the first time in her Reply. *Weaving v. City of Hillsboro*, No. 10-cv-1432-HZ, 2012 WL 526425, at *15 n.5 (D. Or. Feb. 16, 2012).